IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| William James Dutton, | ) | C/A No.: 1:14-1779-BHH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.    Relevant Background

A.    Procedural History

On November 14, 2011, Plaintiff filed applications for DIB and SSI in which he alleged his disability began on December 16, 2008. Tr. at 177–78, 179–84. His

applications were denied initially and upon reconsideration. Tr. at 124–28, 133–34, 135–36. On November 6, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Thomas Henderson. Tr. at 27–47 (Hr'g Tr.). The ALJ issued an unfavorable decision on December 14, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 8–26. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on May 1, 2014. [ECF No. 1].

      B.     Plaintiff's Background and Medical History

           1.     Background

Plaintiff was 53 years old at the time of the hearing. Tr. at 19. He completed high school. Tr. at 40. His past relevant work ("PRW") was as an electrician and an electrician's helper. Tr. at 42. He alleges he has been unable to work since December 16, 2008. Tr. at 177.

           2.     Medical History

On October 14, 2002, Brian G. Cuddy, M.D. ("Dr. Cuddy"), operated on Plaintiff after Plaintiff developed severe, radiating neck pain and an MRI demonstrated a C3-4 canal stenosis with mild spinal cord deformity, broad-based disc bulge, and spondylosis, as well as foraminal narrowing at C5-6. Tr. at 413, 424. The surgical procedure included anterior cervical discectomy and fusion at C3-4, anterior instrumentation, and allograft. Tr. at 415. On November 25, 2002, Plaintiff indicated to Dr. Cuddy that his neck and

2

shoulders had improved, but he had pain in his back and left leg. Tr. at 427. An MRI of Plaintiff's lumbar spine demonstrated degeneration of the intervertebral disc at L5-S1 with bulging of the annulus, spondylosis, and left annular tear, as well as prominent right foraminal bulging of the annulus at L4-5, contacting the exiting right L4 nerve root. Tr. at 421–22. Because Plaintiff had no significant disc herniation, Dr. Cuddy discouraged lumbar spinal surgery. Tr. at 427.

Plaintiff returned to Dr. Cuddy on April 3, 2008, complaining of low back pain that radiated to his bilateral lower extremities and was worse on the left than the right. Tr. at 285. Dr. Cuddy observed Plaintiff to have full range of motion ("ROM") of his spine, but tenderness in his lumbar region with radiation to his bilateral hips. *Id.* Plaintiff had slight motor weakness on his left. Tr. at 285–86. Dr. Cuddy prescribed Lortab and Flexeril, referred Plaintiff for an MRI, and instructed him to avoid lifting over 15 pounds, bending, and crawling. Tr. at 285.

Plaintiff followed up with Dr. Cuddy on April 14, 2008, to discuss his MRI report. Tr. at 287. The MRI demonstrated a right-sided disc herniation with neural foraminal compromise. *Id.* Plaintiff elected to proceed with a lumbar laminectomy/discectomy and nerve root decompression. *Id.* He underwent surgery on April 23, 2008. Tr. at 289–90.

On May 12, 2008, Plaintiff reported good progress and decreased leg pain. Tr. at 288. He desired to return to work within two weeks, but Dr. Cuddy cautioned him not to be too active. *Id.* He instructed Plaintiff to follow up in one month. *Id.*

Plaintiff was examined by R. Blake Dennis, M.D. ("Dr. Dennis"), on January 27, 2009. Tr. at 274–75. Dr. Dennis observed Plaintiff to walk with "a fairly steady gait with

no limp." Tr. at 274. Plaintiff had limited ROM and complained of pain to light touch and rotation of the hips and lower extremities. *Id.* Straight-leg raise test was negative. *Id.* He had normal strength and reflexes in his lower extremities. *Id.* Dr. Dennis reviewed x-rays and an MRI of Plaintiff's lumbar spine and saw no evidence of any abnormality that might explain his left sciatica. *Id.* He diagnosed postlaminectomy syndrome and recommended Plaintiff return to Dr. Cuddy and follow up with Dr. Smith for pain management. Tr. at 275.

Plaintiff followed up with Dr. Cuddy on March 30, 2009. Tr. at 281. Dr. Cuddy observed Plaintiff to have guarding and paraspinal tenderness. *Id.* He indicated Plaintiff's MRI scan showed degenerative disc disease, but no significant neural compression. *Id.* He referred Plaintiff to Robert Alexander, M.D. ("Dr. Alexander"), for evaluation and treatment. *Id.*

Plaintiff presented to Dr. Alexander for an initial consultation on April 28, 2009. Tr. at 315. Plaintiff described lumbar and left lower extremity pain in an S1 distribution as a nine out of 10. *Id.* He complained of intermittent weakness, numbness, and balance difficulties and indicated his symptoms were exacerbated by prolonged standing. *Id.* Dr. Alexander observed Plaintiff to have left-sided tenderness at L4 through S1 and over his sciatic notch. Tr. at 316. Plaintiff complained of increased pain with lumbar flexion and extension. *Id.* On motor examination, Plaintiff had diffuse breakaway weakness in his left lower extremity. *Id.* His sensory perception in his left lower extremity was slightly decreased to light touch. *Id.* He had a mildly positive straight-leg raise on the left, but negative straight-leg raise on the right. *Id.* Dr. Alexander administered a left lumbar

4

spinal injection with Lidocaine and Depo-Medrol, referred Plaintiff to physical therapy, and scheduled him for a left transforaminal epidural at the L5-S1 level on May 7, 2009. *Id.* He indicated Plaintiff could work four hours per day and perform sedentary duties. Tr. at 318.

On May 20, 2009, Plaintiff reported no significant improvement after having started physical therapy and received initial transforaminal epidural. Tr. at 313. Plaintiff was scheduled for a second transforaminal epidural on May 28. *Id.*

On June 8, 2009, Plaintiff reported 25 percent improvement following his second transforaminal epidural. Tr. at 311. Dr. Alexander referred him for electrodiagnostic examination. *Id.*

Plaintiff followed up with Dr. Alexander on June 16, 2009. Tr. at 307. Dr. Alexander indicated an electrodiagnostic examination of Plaintiff's lower extremities and lumbar paraspinals indicated mild chronic left lumbar radiculopathy, but no acute denervation potentials. *Id.* He instructed Plaintiff to follow up for transforaminal epidural on June 18 and to continue physical therapy and sedentary work status. *Id.*

On June 29, 2009, Plaintiff reported improvement following his third injection. Tr. at 305. He indicated discomfort mainly with prolonged standing. *Id.* Dr. Alexander assessed chronic lumbar and left lower extremity pain associated with left paracentral protrusion at L5-S1 and chronic radiculopathy on EMG. *Id.* On June 30, 2009, Dr. Alexander indicated Plaintiff to be at maximum medical improvement. Tr. at 304. He assessed an eight percent impairment rating to Plaintiff's whole person. *Id.*

Plaintiff followed up with Dr. Alexander on August 12, 2009, and complained of a recent increase in lumbar and left lower extremity pain. Tr. at 302. He indicated his pain to be an eight to nine out of 10. *Id.* Dr. Alexander administered a left lumbar paraspinal injection with lidocaine and prescribed Lyrica. *Id.* He scheduled Plaintiff for a left transforaminal epidural injection at the L5-S1 level on August 27, 2009. *Id.*

On August 20, 2009, Plaintiff complained to Dr. Cuddy of excruciating lower extremity discomfort and back pain. Tr. at 282. Dr. Cuddy indicated "patient continues to be disabled at this time" due to "persistent lower extremity discomfort and back pain." *Id.* He referred Plaintiff for an updated MRI. *Id.*

Plaintiff followed up with Dr. Cuddy on November 16, 2009, to review his MRI results. Tr. at 284. The MRI indicated prior surgery on the right at L4-5 and scar tissue, but no recurrent disc herniation at the surgical site or herniation or stenosis at adjacent levels and no spondylolisthesis or significant neural compression. *Id.* Dr. Cuddy referred Plaintiff back to Dr. Alexander for evaluation and treatment of chronic left leg radiculopathy. *Id.* He instructed Plaintiff to follow up as needed and indicated "he remains disabled at this time." *Id.*

Plaintiff followed up with Dr. Alexander on December 14, 2009, and reported that his symptoms had increased since his last visit and his pain was a nine out of 10. Tr. at 300. Dr. Alexander noted Plaintiff had not received the epidural on August 27, 2009, and scheduled him for another epidural on January 7, 2010. *Id.*

On January 15, 2010, Plaintiff reported no improvement from the left transforaminal epidural. Tr. at 298. Although he was taking Oxycontin three times daily,

he continued to indicate his pain to be a nine out of 10. *Id.* Dr. Alexander observed tenderness in Plaintiff's paraspinals and sciatic notch. *Id.* He scheduled Plaintiff for a repeat epidural at L5-S1 on January 21, 2010. *Id.* He indicated that if the epidural was unsuccessful, Plaintiff would likely need to pursue the possibility of a stimulator trial. *Id.*

On January 29, 2010, Plaintiff reported no improvement. Tr. at 297. Dr. Alexander observed tenderness in Plaintiff's lumbosacral paraspinals and sciatic notch. *Id.* He suggested a possible stimulator trial and indicated Plaintiff could return to work on light duty with no lifting over 20 pounds without assistance. Tr. at 296, 297.

Plaintiff presented to Laser Spine Institute for initial evaluation on May 11, 2010. Tr. at 329. Sensory testing was abnormal on the left at L4-5. Tr. at 330. Plaintiff demonstrated left-sided tenderness to palpation at L4-5 and L5-S1. *Id.* He had painful flexion, hyperextension, lateral flexion, and rotation. *Id.* He had positive straight-leg raise and femoral stretch test on the left. *Id.* His bilateral hip abduction, hip adduction, knee flexion, and knee extension were 4/5, but considered normal. Tr. at 331. An x-ray indicated post-operative changes at L4-5. Tr. at 334. An MRI showed a bulging disc and foraminal stenosis at L2-3; facet degeneration and hypertrophy at L3-4; a bulging disc, post-operative changes, facet degeneration/hypertrophy, and foraminal stenosis at L4-5; and a bulging disc, facet degeneration/hypertrophy, and foraminal stenosis at L5-S1. *Id.*

On May 13, 2010, Plaintiff underwent percutaneous discectomy at L2-3 and L4-5, re-exploration lumbar laminotomy with foraminotomy including facetectomy and decompression of the left nerve roots at L4-5, and percutaneous lysis of adhesions/caudal epidural steroid injection. Tr. at 325–28.

Plaintiff presented to David P. Smith, M.D. ("Dr. Smith"), on October 25, 2011. Tr. at 429. He reported that he was unable to renew his prescriptions at the beginning of the month because he had lost his trailer, his prescription, and his money. *Id.* Dr. Smith indicated Plaintiff was "[v]ery depressed." *Id.* He refilled Plaintiff's prescriptions. *Id.*

On January 16, 2012, Plaintiff attended a mental status examination with John V. Custer, M.D. ("Dr. Custer"). Tr. at 366–68. Plaintiff indicated he had crying spells, lacked motivation, and had little appetite. Tr. at 366. He endorsed problems with concentration. *Id.* Plaintiff's mood varied between angry and tearful. Tr. at 367. He demonstrated no evidence of psychosis and denied suicidal or homicidal ideation. *Id.* He was alert and fully oriented. *Id.* He followed a three-step command. Tr. at 368. He remembered three out of three objects immediately and two of the three after a few minutes. He scored 29 out of 30 on the Folstein Mini-Mental Status Exam. *Id.* Dr. Custer indicated Plaintiff's insight was poor. *Id.* He diagnosed pain disorder associated with psychological factors and a medical condition and adjustment disorder with depressed mood. *Id.* Dr. Custer indicated Plaintiff may benefit from vocational rehabilitation or other employment services and from some short-term counseling. *Id.* He indicated Plaintiff's overall prognosis was favorable and that he could manage his own funds. *Id.*

Plaintiff followed up with Dr. Smith on January 20, 2012, for a medication refill. Tr. at 429. Dr. Smith indicated Plaintiff was "[d]oing well in spite of social situation" and living with a friend. *Id.* He indicated Plaintiff's affective changes were not improved with Sertraline and that Plaintiff had hypercholesterolemia, stress, and hypertension. *Id.*

Plaintiff presented to Temisan L. Etikerentse, M.D. ("Dr. Etikerentse") for a consultative examination on February 27, 2012. Tr. at 372–77. Dr. Etikerentse indicated Plaintiff was crying and depressed. Tr. at 373. He observed Plaintiff to have pain and decreased ROM of his neck. Tr. at 374. Plaintiff had normal grip strength and ROM in his upper extremities. *Id.* He had tenderness and a scar in his lower lumbar spine. *Id.* Straight-leg raise test was positive at 70 degrees bilaterally. *Id.* Plaintiff had reduced flexion of his lumbar spine. *Id.* He was able to walk on his heels and toes, tandem walk, and squat without difficulty. *Id.* An x-ray of Plaintiff's lumbar spine indicated mild spondylosis and levoscoliosis. Tr. at 370.

On March 7, 2012, state agency consultant Katrina B. Doig, M.D. ("Dr. Doig"), rendered an opinion as to Plaintiff's physical residual functional capacity. Tr. at 58–60. She indicated Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally stoop, crawl, and climb ladders/ropes/scaffolds; and should avoid even moderate exposure to hazards. *Id.*

On April 16, 2012, Dr. Smith indicated Plaintiff was doing pretty well, but his pain continued to trouble him and he was not able to "get pain free." Tr. at 429. Dr. Smith refilled Plaintiff's medications and prescribed Hydrochlorothiazide for hypertension. *Id.*

State agency consultant Kathleen Broughan, Ph. D., completed a mental RFC on March 8, 2012. Tr. at 60–61. She indicated Plaintiff was moderately limited in his abilities to ask simple questions or request assistance and to accept instructions and respond appropriately to criticism from supervisors. Tr. at 60.

9

On May 12, 2012, Plaintiff presented to Roper Hospital after having sustained a fall. Tr. at 391. He had a contusion on his chest, but a chest x-ray was negative. Tr. at 392, 395. Plaintiff received prescriptions for Vicodin and Flexeril and was discharged home. Tr. at 394.

On June 29, 2012, state agency consultant Jean Smolka, M.D., completed a physical residual functional capacity assessment in which she indicated Plaintiff had the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; occasionally stoop, crawl, and climb ladders/ropes/scaffolds; and avoid even moderate exposure to hazards. Tr. at 93–95.

Dr. Smith observed that Plaintiff was "having a hard time from a psychosocial standpoint" on July 13, 2012. Tr. at 429. He indicated Plaintiff had lost his job the year before and had been unable to secure another job because of his age and chronic low back pain. *Id.* He noted Plaintiff was "becoming depressed" and had suicidal ideation, but no plan. *Id.* Plaintiff was "markedly stressed out" and had limited ROM. *Id.*

Plaintiff presented to Charleston Mental Health on July 31, 2012, for an initial clinical assessment. Tr. at 403–07. He reported being frustrated and overwhelmed because of his inability to obtain work and hopeless because of his inability to obtain treatment for his injuries. Tr. at 403. His symptoms included trouble sleeping, anhedonia, feelings of guilt, low energy, poor concentration, and poor appetite. Tr. at 405. Plaintiff's judgment and insight were fair and he had passive suicidal ideations, but his mental status examination was otherwise normal. Tr. at 406. James Haug, M.D., diagnosed major

depressive disorder, single episode, moderate. *Id.* He prescribed Fluoxetine and encouraged Plaintiff to reduce his daily dose of Xanax by half. Tr. at 407.

On October 10, 2012, Plaintiff reported to Dr. Smith that he had severe, sharp, electrical-type pain in his back and that his stress level remained high. Tr. at 430. Dr. Smith continued Plaintiff's medications and instructed him to return in three months. *Id.*

      C.     The Administrative Proceedings

          1.     The Administrative Hearing

              a.     Plaintiff's Testimony

At the hearing on November 6, 2012, Plaintiff testified he worked for over 30 years as an industrial electrician and last worked in 2008. Tr. at 30. Plaintiff indicated he sustained a neck injury in 2002, but returned to work after undergoing cervical fusion. Tr. at 34. He stated he developed back pain after his cervical fusion and underwent lumbar discectomy and fusion at L4-5 in April 2008. Tr. at 34–35. He testified he returned to work thereafter, but stopped working after a 900-pound box fell on him in December 2008. Tr. at 35.

Plaintiff testified he participated in physical therapy, received shots every week or two, and took medication after his December 2008 injury. Tr. at 35–36. He indicated he was unable to return to work on light duty because he could not stand for six hours per day. Tr. at 36. He stated that after he received the settlement in his workers' compensation claim, he visited Laser Spine Institute in Tampa, Florida for further surgery that was ineffective. Tr. at 36–37. He indicated he recently began treatment at the mental

11

health center. Tr. at 33. He stated his family doctor, whom he visited every three months, had prescribed antidepressants for years. *Id.*

Plaintiff testified he lived with a friend who allowed him to sleep in a spare bedroom. Tr. at 31. He indicated he had used the settlement in his workers' compensation claim to pay for Cobra insurance coverage and to support himself. Tr. at 37. He stated he lost his home, his car, and everything he owned. *Id.*

Plaintiff testified he took medication and alternated between sitting up and lying down throughout the day. Tr. at 31. He indicated he experienced numbness in his lower extremities if he sat for more than a couple of hours. *Id.* Plaintiff testified that he could walk no more than a block and had a history of falls. Tr. at 38. He indicated his pain was severe and constant and that he was never comfortable. *Id.* He stated he would lie down every couple of hours and take Oxycodone frequently to obtain relief. Tr. at 38–39.

Plaintiff testified that he had difficulty bending to tie his shoes. Tr. at 40. He indicated he watched television during the day and played his guitar occasionally. Tr. at 37. He stated he borrowed a friend's car to drive to the hearing, but experienced anxiety while driving. Tr. at 33, 39. Plaintiff testified that if he was active one day, he was homebound the next day. Tr. at 40. He indicated he no longer participated in activities with friends. *Id.*

The ALJ questioned Plaintiff about his receipt of unemployment compensation. Tr. at 32. Plaintiff indicated he last collected unemployment one-and-a-half to two years earlier. *Id.*

b.     Vocational Expert Testimony

Vocational Expert ("VE") Josephine Doherty reviewed the record and testified at the hearing. Tr. at 41. The VE categorized Plaintiff's PRW as an electrician as medium and skilled and an electrician's helper as heavy and semiskilled. Tr. at 42. The ALJ asked the VE if Plaintiff's PRW resulted in transferable skills to the light or sedentary exertional levels. *Id.* The VE indicated that Plaintiff had transferable skills from PRW to semiskilled jobs at the light level. *Id.* The ALJ described a hypothetical individual of Plaintiff's vocational profile who was limited to simple, routine, repetitive tasks and could perform the full range of light work, except that he would be limited to occasional postural activities and should avoid climbing, crawling, kneeling, and even moderate exposure to work hazards. *Id.* The VE testified that the hypothetical individual would be unable to perform Plaintiff's PRW. *Id.* The ALJ asked whether there were any other jobs in the region or national economy that the hypothetical person could perform. *Id.* The VE identified light jobs with specific vocational preparations ("SVP") of two, as a mail sorter, *Dictionary of Occupational Titles* ("*DOT*") number 209.687-026, with 1,250 positions in South Carolina and 70,527 positions in the national economy; a ticket taker, *DOT* number 344.667-010, with 2,220 positions in South Carolina and 85,089 positions in the national economy; and a retail marker, *DOT* number 209.587-034, with 2,250 positions in South Carolina and 69,392 positions in the national economy. Tr. at 43. The ALJ then asked the VE to explain the effect on the jobs identified in response to the hypothetical if the individual required breaks of 15 to 20 minutes in the morning and afternoon in addition to regularly-scheduled breaks. *Id.* The VE testified that the

additional limitation would eliminate the jobs cited in response to the earlier question and all employment at the unskilled level. *Id.*

Plaintiff's attorney asked the VE if it would eliminate all of the simple non-repetitive jobs if the individual were unable to maintain concentration and focus needed to perform simple work on an occasional basis. Tr. at 45. The VE responded in the affirmative. *Id.* Plaintiff's attorney next asked the VE if jobs would be eliminated if the individual had to take unscheduled breaks from the workplace for several minutes at a time. *Id.* The VE again responded in the affirmative. *Id.*

2.    The ALJ's Findings

In his decision dated December 14, 2012, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since December 16, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairment: status post anterior discectomy and fusion (ACDF), lumbar laminectomy and laser discectomy, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day. He may perform postural activities occasionally but cannot climb, crawl or kneel and must avoid even moderate exposure to work hazards. The claimant is further limited to performing simple, repetitive, routine tasks.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on October 29, 1959, and was 49 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from December 16, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 13–21.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    The ALJ failed to consider all evidence submitted by Plaintiff to support his applications; and

2)    The ALJ did not consider the combined effects of all of Plaintiff's impairments.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

"disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last for
> at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series

of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983)

(discussing considerations and noting "need for efficiency" in considering disability

claims). An examiner must consider the following: (1) whether the claimant is engaged in

substantial gainful activity; (2) whether he has a severe impairment; (3) whether that

impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146

impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

(1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Failure to Consider Evidence

On August 11, 2009, certified rehabilitation counselor David R. Price, M. Ed. ("Mr. Price"), evaluated Plaintiff and prepared a report of his findings to be used in Plaintiff's workers' compensation claim. Tr. at 200–05. Mr. Price concluded Plaintiff was medically prohibited from returning to his usual and customary occupation as an electrician. Tr. at 201. Mr. Price observed Plaintiff to have normal mood and affect and no obvious signs of cognitive or emotional deficits; to walk with a slight left-sided limp without an assistive device; to have difficulty changing from a seated position, frequently shift weight, and get up four times during the two-hour interview; and to answer candidly and put forth good effort. *Id.* Mr. Price administered the Wide Range Achievement Test, Fourth Revision. Tr. at 203. Plaintiff scored at a high eleventh grade level for word recognition, at a high tenth grade level for sentence comprehension, at the twelfth grade level for spelling, and at the eighth grade level for math. *Id.* Mr. Price also administered the Revised Beta Examination, Second Edition and found Plaintiff's IQ score to be 105, which was in the sixty-second percentile. *Id.* Mr. Price indicated Plaintiff's scores were roughly equivalent to his years of formal education. *Id.* He indicated the following

> [B]y his description, Mr. Dutton has not been able to demonstrate physical capacity for sustained activity at sedentary levels, which is the lowest of all classifications. He is restricted to an easy chair with little potential for

19

sustained upright sitting, standing, or walking. He has no repetitive use of his spine for lifting or non-material handling duties. Pain flares completely disable Mr. Dutton for several days at a time. His requirement for daily narcotic medications would prevent him from operating a commercial vehicle, equipment, working at unprotected heights, or around moving machinery. Cognitive function and judgment processes may be impacted and would preclude work in a position of responsibility or where quick decisions are necessary. In the workplace, Dr. Dutton would be considered error prone and at higher risk for accident, injury, or industrial mishap.

Tr. at 204–05. Mr. Price explained that there were essentially two alternate vocational outcomes for Plaintiff. Tr. at 205. The first was a return to light work at a reduced skill level and earning capacity. *Id.* The second, considered by Mr. Price to be more likely, was an inability to sustain activity at the sedentary or light physical demand level. *Id.* Mr. Price indicated that based on Plaintiff's age, physical limitations, and the potential liability associated with his daily narcotic use, it was unlikely he would be able to obtain a job or successfully engage in it. *Id.*

Plaintiff argues the ALJ neglected to consider Dr. Price's evaluation. [ECF No. 12 at 4]. The Commissioner cites the recent decision in *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861 (4th Cir. 2014), to argue that the ALJ was not required to cite all evidence considered in the decision and that his statements that he considered the entire record were sufficient. [ECF No. 13 at 11–12]. Plaintiff maintains that this case can be distinguished from *Reid* in that this ALJ neglected to make any reference to the evidence at issue, whereas the ALJ in *Reid* referenced the medical evidence in his decision. [ECF No. 14 at 2–3].

The ALJ must consider all relevant evidence received in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1527(b), 416.927(b). Relevant evidence includes

"information from other sources." 20 C.F.R. §§ 404.1512(b)(3), (4), 416.912(b)(3), (4).
Other sources are defined as medical sources who do not qualify as acceptable medical
sources under 20 C.F.R. §§ 404.1513(a) and 416.913(a), educational personnel, public
and private social welfare agency personnel, and other non-medical sources. 20 C.F.R. §§
404.1513(d) and 416.913(d). The ALJ may only rely on the opinions of acceptable
medical sources to establish the existence of a medically-determinable impairment and to
provide medical opinions. SSR 06-03p; *see also* 20 C.F.R. §§ 404.1513(a), 416.913(a),
404.1527(a)(2), 416.927(a)(2). However, he may use evidence from other sources[3] to
evaluate the severity of the claimant's impairments and to determine how the claimant's
impairments affect his functional abilities. *Id.* The ALJ is required to consider evidence
from "other sources" when evaluating an "acceptable medical source's opinion" under 20
C.F.R. §§ 404.1527 and 416.927. *Id.* Although the ALJ is not required to explicitly
consider the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) when evaluating
opinions from other sources, "[t]hese factors represent basic principles that apply to the
consideration of all opinions." *Id.*

Although "the Commissioner's decision must 'contain a statement of the case, in
understandable language, setting forth a discussion of the evidence, and stating the
Commissioner's determination and the reason or reasons upon which it is based,' 42
U.S.C. § 405(b)(1), 'there is no rigid requirement that the ALJ specifically refer to every
piece of evidence in his decision.'" *Reid*, 769 F.3d at 865, *citing Dyer v. Barnhardt*, 395

---

[3] Rehabilitation counselors are specifically referenced as "other sources" whose information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *See* SSR 06-03p.

F.3d 1206, 1211 (11th Cir. 2005) (per curiam); *Russell v. Chater*, No. 94-2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (per curiam) (explaining that this Court has not "established an inflexible rule requiring an exhaustive point-by-point discussion in all cases"). Thus, a distinction may be drawn between the ALJ's requirement to consider opinions from other sources and his need to explain in his decision the weight accorded to opinions from acceptable medical sources, but the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p.

In *Reid*, the court found that the Commissioner's decision satisfied the statutory requirements because "[t]he Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word." 769 F.3d at 865, *citing Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) ("Our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter"). The court further explained that the ALJ's decision specifically referenced the time period the plaintiff claimed the ALJ ignored and that the plaintiff "failed to point to any specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim." *Id.*

The ALJ indicated he carefully considered the entire record. Tr. at 15. He stated he considered "all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence" and "opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." *Id.*

This case is similar to *Reid* in that the ALJ indicated he had considered the entire record, but may be distinguished from *Reid* in that the record reveals evidence to the contrary. Unlike in *Reid* where the plaintiff neglected to cite specific evidence not considered by the ALJ that might have changed the outcome, Plaintiff cites a specific evaluation and report from Mr. Price, a certified rehabilitation counselor. *See* ECF No. 12 at 4. Mr. Price observed Plaintiff to have difficulty changing from a seated position to a standing position and to shift positions frequently and require positions changes four times during a two-hour interview. Tr. at 204. He indicated Plaintiff had pain flares that disabled him for several days at a time and that his use of narcotic pain medication significantly affected the type of work he could perform. Tr. at 204–05. Finally, he indicated Plaintiff was unlikely to be able to engage in any type of significant work because of his age, physical limitations, and potential liability to an employer. Tr. at 205. Mr. Price's report contains specific observations regarding Plaintiff's pain-related behavior, the effects of his medications, and his functional limitations that were not considered by the ALJ in making the disability determination.

The undersigned finds little support in the record for the Commissioner's argument that because the ALJ found Plaintiff could perform light work, which was the less likely scenario advanced by Mr. Price, he implicitly considered Mr. Price's evaluation and opinion. *See* ECF No. 13 at 13. The ALJ did not account for Plaintiff's

difficulty changing positions or need to shift positions in his RFC. *See* Tr. at 15. He did not include in his RFC assessment or consider in his decision possible absences as a result of Plaintiff's pain flares. *See id.* Although the ALJ limited Plaintiff to simple, routine, repetitive work, he specifically stated he did so based on Plaintiff's depression and he indicated Plaintiff must avoid even moderate exposure to work hazards based on the impairment to his back. *See* Tr. at 15, 19. Finally, the ALJ failed to consider Mr. Price's opinion that Plaintiff would likely be unable to return to sustained activity at the sedentary or light exertional level. *See* Tr. at 205. While the Commissioner correctly asserts this statement was entitled to no special deference, it should not have been ignored. *See* ECF No. 13 at 12. In light of the ALJ's failure to cite Mr. Price's opinion or any findings from his examination, the undersigned recommends the court reject the Commissioner's argument that the ALJ implicitly considered Mr. Price's evaluation in determining whether Plaintiff was disabled.

The undersigned further recommends the court find that the ALJ did not adequately consider the vocational evaluation and Mr. Price's opinion in assessing the medical opinion evidence. Although Mr. Price's opinion was not a medical opinion and did not require explicit consideration under 20 C.F.R. §§ 404.1527 and 416.927, it was among the evidence that the ALJ was required to consider in evaluating the opinion evidence. *See* 20 C.F.R. §§ 404.1512(b)(3), (4), 416.912(b)(3), (4), 404.1527(b), 416.927(b); SSR 06-03p. The ALJ considered opinions of the state agency consultants, Dr. Cuddy, and Dr. Alexander. Tr. at 19. He gave great weight to the state agency medical consultants regarding Plaintiff's physical limitations, but accorded little weight

to the state agency psychologists regarding Plaintiff's mental limitations. *Id.* He conferred little weight to Dr. Cuddy's statement that Plaintiff "remains disabled," and cited the objective tests and Dr. Cuddy's failure to explain why he considered Plaintiff disabled. *Id.* The ALJ accorded "greater weight" to Dr. Alexander's opinion that Plaintiff could return to light duty work because he "consistently treated the claimant following his onset date and his opinion is more consistent with the other evidence of record." *Id.* Mr. Price's observations and opinion suggested greater functional limitations than those advanced by the state agency physicians and Dr. Alexander. *Compare* Tr. at 204–05, *with* Tr. at 58–60, 93–95, and 296. The ALJ neglected to consider Mr. Price's opinion in assessing these medical opinions and did not acknowledge the support that it provided for Dr. Cuddy's opinion. *Compare* Tr. at 204–205, *with* Tr. at 284. Therefore, the undersigned recommends a finding that the ALJ failed to comply with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSR 06-03p by neglecting to consider Mr. Price's opinion and findings in evaluating and weighing the medical opinions of record.

2.      Failure to Consider All Impairments and Their Combined Effects

Plaintiff argues the ALJ failed to consider evidence that suggested he had a pain disorder and an adjustment disorder. [ECF No. 12 at 5]. He also contends the ALJ neglected to consider the side effects imposed by his medications and the combined effects of his mental and physical impairments. *Id.* Plaintiff maintains that the ALJ's statement that that ALJ considered the combined effects of his impairments was insufficient to the extent that the ALJ did not explain his evaluation. [ECF No. 14 at 4].

The Commissioner argues that Plaintiff cites no specific evidence to suggest he had additional limitations to his RFC that were not considered by the ALJ. [ECF No. 13 at 13]. She further maintains the ALJ expressly considered the combined effects of Plaintiff's impairments. *Id.*

When a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of those impairments in determining the claimant's RFC and her disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated the importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments). The Commissioner must consider the combined effect of all of the individual's impairments "without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(b)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* However, the Fourth Circuit later indicated that "the adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments." *Brown v. Astrue*, C/A No. 0:10-CV-1584-RBH, 2012 WL 3716791 (D.S.C. Aug. 28, 2012), *citing Green v. Chater*, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. 1995)).

26

The ALJ explained that he considered the combined effects of Plaintiff's severe and nonsevere impairments and found that they were "not at least equal in severity to those described in any listings." Tr. at 15. He indicated "[i]n this regard, I have specifically considered the cumulative effects of the impairments on the claimant's ability to work" and cited *Walker. Id.* He found that the medical records indicated Plaintiff could "ambulate and perform fine and gross manipulations within the residual functional capacity" and that no evidence suggested Plaintiff could not "perform all of the mental activities generally required by competitive, remunerative, unskilled work." *Id.*

The ALJ found Plaintiff had the RFC to perform a reduced range of simple, routine, repetitive light work to include lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; standing, walking, and sitting for six hours in an eight-hour workday; occasionally performing all postural activities except climbing, crawling, and kneeling; and avoiding even moderate exposure to work hazards. Tr. at 15. The ALJ wrote that the RFC assessment was supported by the record as a whole. Tr. at 19. He indicated Plaintiff "was limited to light work and given postural limitations to avoid aggravation of his back condition" and was limited to simple, routine, repetitive tasks "[d]ue to moderate functional limitations in concentration, persistence, and pace resulting from depression." *Id.*

Plaintiff argues the ALJ failed to assess functional limitations based on his diagnoses of pain disorder and adjustment disorder. *See* ECF No. 12 at 5. After examining Plaintiff at the request of the state agency, Dr. Custer diagnosed "pain disorder

associated with psychological factors and a medical condition" and "adjustment disorder with depressed mood." *See* Tr. at 368. The ALJ found major depressive disorder to be a severe impairment and imposed functional limitations based on that impairment, but did not consider pain disorder or adjustment disorder.

Adjustment disorders are essentially characterized by the presence of emotional or behavioral symptoms in response to an identifiable stressor. American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Disorders* ("*DSM-V*") at 287 (2013). Dr. Custer identified that stressor as a pain disorder[4] associated with psychological factors and a medical condition and indicated Plaintiff's overall prognosis was favorable, but "likely dependent on how his physical condition either progresses or improves." Tr. at 368. Adjustment disorder with depressed mood is characterized by low mood, tearfulness, or feelings of hopelessness and its symptom profile differs from that of major depressive disorder. *Id.* at 287–88. According to *DSM-V*, "[m]any of the functional consequences of major depressive disorder derive from individual symptoms" and the "[i]mpairment can be very mild" or "range to complete incapacity." *Id.* at 167. The functional consequences of adjustment disorders are "frequently manifested as decreased performance at work or school and temporary changes in social relationships." *Id.* at 288. Because the functional consequences of major depressive disorder may vary widely between individuals and in the same individual at different times, its functional

---

[4] The undersigned's review of *DSM-V* reveals no psychological diagnosis or diagnostic criteria for "pain disorder." Although *DSM-V* discusses "somatic symptoms and related disorders," consideration of pain disorder based on the criteria for somatic symptoms and related disorder is inappropriate in view of a lack of information in Dr. Custer's report to suggest Plaintiff meets the diagnostic criteria for such a diagnosis. *DSM-V* at 309–12.

limitations vary from that of adjustment disorder with depressed mood, which presents more consistent functional limitations and manifests due to a particular stressor or stressors. *Compare id.* at 167, *with id.* at 288.

Based on the differences in functional limitations imposed by adjustment disorder with depressed mood as opposed to major depressive disorder, the undersigned finds that the ALJ erred in failing to consider Plaintiff's diagnosis of adjustment disorder with depressed mood and Dr. Custer's indication that Plaintiff's psychological condition was exacerbated by the presence of a pain disorder resulting from his physical impairment. The ALJ restricted Plaintiff to simple, routine, repetitive tasks based on major depressive disorder, but those restrictions are inappropriate for an impairment that is characterized by decreased performance and exacerbated by an identifiable stressor—in this case, pain.

The undersigned recommends a finding that the ALJ neglected to consider the functional effects of pain disorder and adjustment disorder with depressed mood on Plaintiff's ability to engage in work activity. Plaintiff cites Mr. Price's indication that "Plaintiff's recurrent pain flares accompanied by his chronic use of narcotic pain medicine would cause Plaintiff to be unable to sustain gainful employment." *See* ECF No. 12 at 6, *citing* Tr. at 205. Mr. Price's statement is supported by a record replete with references to Plaintiff's pain and indications that his pain and the medications used to treat it affected his functional abilities. *See* Tr. at 31 (Plaintiff testified he alternated between sitting up and lying down throughout the day); 36 (Plaintiff stated he was unable to stand for six hours to work on light duty); 38–39 (Plaintiff testified his pain was severe and constant and that he needed to lie down every couple of hours and take Oxycodone

frequently); 274 (Plaintiff complained to Dr. Dennis of pain to light touch and rotation of his hips and lower extremities); 297 (Plaintiff reported no improvement from injections and Dr. Alexander recommended a stimulator trial to treat Plaintiff's pain); 298 (Plaintiff complained to Dr. Alexander that his pain remained a nine out of 10, despite his use of Oxycontin three times daily); 300 (Plaintiff complained that his pain was a nine out of ten); 302 (Plaintiff indicated to Dr. Alexander that his pain was an eight to nine out of 10); 305 (Plaintiff complained to Dr. Alexander of pain with prolonged standing); 315 (Plaintiff complained to Dr. Alexander that his pain was a nine out of 10; accompanied by intermittent weakness, numbness, and balance difficulties; and exacerbated by standing); 374 (Dr. Etikerentse observed Plaintiff to have pain and decreased range of motion); 429 (Dr. Smith indicated Plaintiff was unable to get pain free and was having a hard time from a psychosocial standpoint because he was unable to get work because of his chronic back pain); and 430 (Plaintiff complained to Dr. Smith of stress and severe, sharp, electrical-type pain in his back). In light of evidence in the record and Mr. Price's assessment of the effects of pain and pain medication on Plaintiff's ability to work, the undersigned recommends the court reject the Commissioner's argument that Plaintiff failed to cite specific evidence that indicated further restriction to his functional abilities than those considered by the ALJ.

The undersigned also recommends the court find that the ALJ neglected to consider the combined effects of Plaintiff's impairments. The ALJ failed to consider the effects of pain disorder, adjustment disorder with depressed mood, and side effects of medications on the Plaintiff's ability to work. Although he assessed physical limitations

based on Plaintiff's back pain and limited Plaintiff to simple, routine, repetitive tasks because of depression, the ALJ considered Plaintiff's physical impairment and his mental impairment in a fragmented manner and neglected to consider the effects of Plaintiff's physical impairment on his mental functioning. A review of the entire record fails to yield evidence that the ALJ considered the combined effects of Plaintiff's impairments as required by 42 U.S.C. § 423(b)(2)(B) and Fourth Circuit precedent.

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

March 23, 2015                             Shiva V. Hodges
Columbia, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).